**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAVELL REDMOND, | ) | |
| | ) | Case No.: 1:23-cv-05360 |
| Plaintiff, | ) | |
| | ) | Judge: Mary M. Rowland |
| v. | ) | |
| | ) | |
| VILLAGE OF DOLTON, a municipal | ) | |
| corporation; and TIFFANY HENYARD, in | ) | |
| her official capacity as Mayor of Dolton, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT VILLAGE OF DOLTON'S LOCAL**
**RULE 56.1 STATEMENT OF UNCONTESTED MATERIAL FACTS**

Plaintiff Lavell Redmond, by counsel, submits the following responses to Defendant Village of Dolton's Local Rule 56.1 Statement of Uncontested Material Facts, pursuant to Local Rule 56.1(b)(2). Plaintiff responds to each asserted fact only to the extent it is properly supported by admissible evidence, material to the pending motion, and not argumentative, conclusory, or a legal conclusion. Where Defendant purports to characterize testimony or documents, Plaintiff admits only that the cited testimony was given or that the cited document contains the referenced language, and denies any unsupported characterization, inference, or legal conclusion.

**JURISDICTION AND VENUE**

1. This action arises under the First Amendment to the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. §1983).

    **RESPONSE: Admit.**

2. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

**RESPONSE: Admit.**

3. Venue is vested in this Court pursuant to 28 U.S.C. §1391(b) as the alleged acts complained of arose in this district.

**RESPONSE: Admit.**

## THE PARTIES

4. Plaintiff Levell Redmond is a former employee of the Village of Dolton.

**RESPONSE: Admit that Plaintiff Lavell Redmond is a former employee of the Village of Dolton. (Plaintiff notes that Defendant misspells Plaintiff's first name as "Levell.")**

5. The Village of Dolton is a local municipal corporation organized under the laws of the State of Illinois.

**RESPONSE: Admit.**

6. Defendant Tiffany Henyard is the former mayor of the Village of Dolton.

**RESPONSE: Admit that Tiffany Henyard is the former mayor of the Village of Dolton.**

## FACTS RELATIVE TO PLAINTIFF'S CLAIM

7. Plaintiff is a convicted felon. In 1992 Plaintiff was convicted of aggravated criminal sexual assault with a weapon and sentenced to 50 years of incarceration, served 25 years in prison, and was released in 2016. (Ex. A, p. 8; Ex. B, pp. 31-32, 34-35).

**RESPONSE: Admit for purposes of summary judgment that Plaintiff has a prior felony conviction and served a period of incarceration. Plaintiff denies any implication that this fact establishes a lawful basis for his termination or defeats his First Amendment retaliation claim.**

8. The only claim Plaintiff asserts in this lawsuit is that he was retaliated against in violation of his First Amendment rights when he was terminated shortly after speaking to Chicago Tribune reporter Ted Slowik wherein he informed Slowik that Henyard knew of Plaintiff's criminal background when she hired him, which contradicted her earlier statements that she was unaware of Plaintiff's background. (Ex. A).

**RESPONSE: Admit in part and deny in part. Admit that Plaintiff asserts a First Amendment retaliation claim arising from his termination after speaking to Chicago Tribune**

**/ Daily Southtown columnist Ted Slowik about Henyard's knowledge of Plaintiff's criminal background. Deny any implication that Plaintiff's speech was a purely private grievance or that the Village's description fully captures the public-concern nature of the speech, which included statements concerning Henyard's public truthfulness, municipal hiring practices, campaign work, and public employment. See Def. Ex. A; Def. Ex. B, Redmond Dep. 110:5–18, 144:15–24, 146:1–24, 147:1–24, 148:1–24.**

<u>**Plaintiff's Employment with the Village of Dolton:**</u>
9. Plaintiff met Henyard in 2020 and subsequently passed out pamphlets and literature in Dolton for a couple months to aid in Henyard's campaign to become mayor. (Ex. B, pp. 52-57).

> **RESPONSE: Admit.**

10. Plaintiff was then hired as a code enforcement officer for the Village of Dolton in or around September 2021. (Ex. B, pp 69-70; Ex. C).

> **RESPONSE: Admit.**

11. One day while patrolling the Village to look for code violations, Plaintiff saw Henyard and Village Administrator Freeman standing on the street watching public works employees performing work. When Plaintiff rolled down his window to speak to them, Plaintiff stated that Henyard "jumped behind [Freeman] like I was going to shoot at her or something. So I didn't understand that. So I -- when I drove off, I had a weird feeling she up to something" and "that was eerie to me". (Ex. B, pp. 107-08).

> **RESPONSE: Admit that Plaintiff gave the cited deposition testimony. Plaintiff denies any implication that the testimony establishes misconduct sufficient to justify termination, or that the event was the true reason for termination. See Def. Ex. B, Redmond Dep. 107:1–108:24; Pl. Ex. 3, Johnson Dep. 38:5–16, 40:3–9.**

12. A few days later, Plaintiff saw Henyard and other employees walking and he stopped, then later drove off. (Ex. B, p. 108).

> **RESPONSE: Admit that Plaintiff gave the cited deposition testimony. Plaintiff denies any implication that the testimony establishes misconduct sufficient to justify termination, or that this was the true reason for termination. See Def. Ex. B, Redmond Dep. 108:1–24; Pl. Ex. 3, Johnson Dep. 38:5–16, 40:3–9.**

13. Plaintiff admitted to carrying his personal binoculars and a personal recording device in his vehicle while he worked. (Ex. D, ¶s (C)(6) and (7) (p. 10 of 14)).

3

**RESPONSE: Admit that the cited IDHR Investigation Report contains this statement. Plaintiff denies any implication that the presence of binoculars or a recording device was the true reason for termination or appears in the termination letter. See Def. Ex. D; Def. Ex. E.**

14. Plaintiff also admitted that on one occasion while on duty, he saw Henyard walking and took a picture of her on his cellphone. (Ex. D, ¶ (C)(3) (p. 10 of 14).

**RESPONSE: Admit that the cited IDHR Investigation Report contains this statement. Plaintiff denies any implication that this was the true reason for termination or that the termination letter identifies this alleged conduct as the basis for termination. See Def. Ex. D; Def. Ex. E.**

15. That same day, Plaintiff's supervisor Thigpen told him he had to work in the office or go home for the remainder of the day because of Henyard. (Ex. D, ¶ (C)(5) (p. 10 of 14).

**RESPONSE: Admit that the cited IDHR Investigation Report contains this statement. Plaintiff denies any implication that the statement establishes a lawful basis for termination or that it eliminates Plaintiff's evidence of retaliatory motive. See Def. Ex. D; Def. Ex. B, Redmond Dep. 144:15–24, 146:1–24, 147:1–24, 148:1–24**

16. Police Chief Collins called Plaintiff, asked Plaintiff what was going on between Plaintiff and Henyard, and informed Plaintiff that Henyard was trying to have Plaintiff arrested for following her around. (Ex. B, pp. 108-09).

**RESPONSE: Admit that Plaintiff testified that Police Chief Collins called him, asked what was going on between Plaintiff and Henyard, and informed Plaintiff that Henyard was trying to have Plaintiff arrested for following her around. See Def. Ex. B, Redmond Dep. 108:1–109:24.**

17. Plaintiff then believed Henyard was trying to get rid of him. (Ex. B, p. 109).

**RESPONSE: Admit that Plaintiff testified he believed Henyard was trying to get rid of him. See Def. Ex. B, Redmond Dep. 109:1–24.**

18. Concerning Chief Collins informing Plaintiff about Henyard trying to have Plaintiff arrested for following her, Plaintiff stated:

> So once [Chief Collins'] told me that, that's when I went to Ted Slowik. Now, keep in mind, there was a lot of people in the Village that kept telling me go to the media and tell your story. She's been lying on you, talking about she don't know your background,

she didn't know nothing about it. And I -- I had her back. I was like, no, I'm not doing that to her. I don't care what people think. I'm not doing that until she pulled that move. When she tried to have me arrested, I realized she's trying to get rid of me, but she don't know how, but she's willing to lie to get me arrested. So I went to the news media and talked to Ted Slowik and told him my whole story and the truth, and she fired me the next day. (Ex. B, p. 110).

**RESPONSE: Admit that Plaintiff gave the quoted testimony. Plaintiff further states that the testimony supports Plaintiff's claim that his speech to the media was a substantial motivating factor in his termination. See Def. Ex. B, Redmond Dep. 110:5–18.**

19. Plaintiff testified that he told Slowik that Henyard knew about Plaintiff's background and Henyard had been lying to the media stating she did not know about it. (Ex. B, p. 144).

**RESPONSE: Admit.**

20. Plaintiff further testified that Slowik told Plaintiff that Slowik had reached out to Henyard for comment on the statements Plaintiff made to Slowik, and Plaintiff assumed that is why Henyard fired him shortly thereafter on August 3, 2022. (Ex. B, pp. 146-48, 151-53).

**RESPONSE: Admit in part and deny in part. Admit that Plaintiff testified that Slowik told him Slowik had reached out to Henyard for comment and that Plaintiff testified the termination occurred right after Slowik contacted Henyard. Deny any implication that Plaintiff's evidence of knowledge and causation rests only on speculation or "assumption."**

21. Plaintiff stated Henyard did not fire him earlier after the media's explosive coverage of Plaintiff's criminal background and employment by the Village because she had a crush on Plaintiff and thought they were going to be a couple. Plaintiff repeatedly testified that Henyard had a crush on him. (Ex. B, pp. 61-65, 68, 82-83, 132-33).

**RESPONSE: Admit that Plaintiff testified that he believed Henyard had a crush on him. Deny any implication that this testimony defeats Plaintiff's retaliation claim. Plaintiff testified that the "main reason" for his termination was that he "went to the news" and told Slowik that Henyard knew about his background and lied to the media. Def. Ex. B, Redmond Dep. 144:15–24.**

22. On August 3, 2022 Plaintiff was handed a letter that stated that Plaintiff had violated Section 2.2 of the Village of Dolton Employee Policy & Procedure Manual "as well as inappropriate conduct against other employees", and that he was terminated, effective immediately. (Ex. B, pp. 151-53; Ex. E).

**RESPONSE: Admit that Plaintiff was given a termination letter dated August 3, 2022, stating that Plaintiff violated Section 2.2 of the Village of Dolton Employee Policy & Procedure Manual "as well as inappropriate conduct against other employees," and that his employment was terminated effective immediately. Plaintiff denies any implication that the letter identifies the actual factual basis for the termination, identifies any complainant, identifies any investigation, or proves the Village's stated reason was true. Def. Ex. E; Pl. Ex. 3, Johnson Dep. 38:5–16, 40:3–9.**

23. Section 2.2 of the Village's Policy & Procedure Manual lists harassment and threatening, coercing or intimidating other employees as some of the types of misconduct which are prohibited. (Ex. F, p. V 000025).

**RESPONSE: Admit that Section 2.2 of the Village Policy & Procedure Manual lists harassment and threatening, coercing, or intimidating other employees as prohibited misconduct. Plaintiff denies that the cited policy establishes that Plaintiff engaged in such conduct or that such conduct was the true reason for termination. See Def. Ex. F; Def. Ex. E; Pl. Ex. 3, Johnson Dep. 38:5–16, 40:3–9.**

**Claim Asserted in This Lawsuit:**
24. Plaintiff's sole claim in this lawsuit is that he was terminated in retaliation for speaking to Slowik about Henyard knowing of Plaintiff's criminal background in violation of his First Amendment Rights. (Ex. A).

**RESPONSE: Admit that Plaintiff's claim in this lawsuit is that he was terminated in retaliation for speaking to Slowik about Henyard knowing of Plaintiff's criminal background in violation of his First Amendment rights.**

25. Plaintiff's Complaint states, "Mayor Tiffany A. Henyard openly lied to both Fox News reporters as well as the Village of Dolton's Board of Trustees claiming to not have any knowledge of my criminal background…" (Ex. A, pp. 8-9).

**RESPONSE: Admit that Plaintiff's Complaint contains the quoted language.**

26. Plaintiff's Complaint further states, "I contacted Ted Slowvic [sic] from the Chicago Tribune and he readily gave me an interview. I told him the truth about how Mayor Tiffany A. Henyard lied to the media about her lack of knowledge with regards to my background and that she would likely try to fire me for telling my truths, to which she did almost immediately after being sought out by the Chicago Tribune." (Ex. A, pp. 9-10).

**RESPONSE: Admit that Plaintiff's Complaint contains the quoted language.**

6

27. Plaintiff then asserts that because he spoke to Slowik about Henyard's alleged lies concerning knowing about Plaintiff's criminal background, he was terminated in violation of his First Amendment right to freedom of speech. (Ex. A, p. 10).

**RESPONSE: Admit that Plaintiff asserts he was terminated in violation of his First Amendment right to freedom of speech because he spoke to Slowik about Henyard's alleged public lies concerning her knowledge of Plaintiff's criminal background.**

28. Plaintiff also did not list Slowik's name as one of the individuals likely to have discoverable information on his Rule 26(a) disclosures. (Ex. G).

**RESPONSE: Admit that Slowik was not listed by name in Plaintiff's Rule 26(a)(1) initial disclosures. Plaintiff denies any implication of prejudice or surprise. Plaintiff's Complaint identified Slowik and the Chicago Tribune as central to the claim; Defendant's own filings and exhibits identify the Slowik article; and Plaintiff's disclosures expressly reserved the right to supplement and did not purport to identify every potentially relevant witness. In fact, under the first section "Individuals likely to have discoverable information (Rule 26(a)(1)(A))," Plaintiff explicitly identified the following "Individuals identified by Defendants or during discovery. Individuals identified in the documents produced in this case. Custodians of any documents produced in this case. Witnesses necessary for the authentication of any documents produced in this case." See Def. Ex. A; Def. Ex. G; Pl. Ex. 5, August 3, 2022 Daily Southtown / Chicago Tribune Article by Ted Slowik.**

**Plaintiff's Charge of Discrimination filed with the Illinois Department of Human Rights:**
29. On December 27, 2022 Plaintiff filed a Charge of Discrimination with the State of Illinois Department of Human Rights on December 14, 2022 against the Village of Dolton concerning his August 3, 2022 termination. ("Charge"). (Ex. H).

**RESPONSE: Admit that Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights concerning his August 3, 2022 termination. Plaintiff states that the document reflects Plaintiff signed the Charge on December 14, 2022, and that it was received by IDHR on December 27, 2022. Def. Ex. H.**

30. In the Charge, Plaintiff certified via his signature that, pursuant to Section 1-109 of the Code of Civil Procedure, the statements contained in the Charge were true and correct. (Ex. H, p. 1).

**RESPONSE: Admit that Plaintiff signed the Charge and that the Charge contains the referenced certification language. Def. Ex. H.**

31. In contrast to the claims made in this lawsuit, Plaintiff stated in the Charge that he was "Discharged -- August 3, 2022, Due to Conviction Record." (Ex. H, p. 2). Plaintiff further stated and certified:

(1) I have a conviction record;

(2) Respondent had knowledge of my conviction record;

(3) On August 3, 2022, I was discharged by the Respondent through manager Brian Thigpen, for allegedly violating the Village of Dolton's Employee Policy; and

(4) Similar situated employees without conviction records were treated differently under similar circumstances. (Ex. H, p. 2).

**RESPONSE: Admit that the Charge contains the quoted language. Deny Defendant's characterization that the Charge is "in contrast" to Plaintiff's First Amendment claim to the extent Defendant suggests that Plaintiff may not have more than one causal theory, or that the charge eliminates Plaintiff's First Amendment retaliation claim. Plaintiff's protected speech concerned the same public controversy: Henyard's prior knowledge of Plaintiff's conviction record and alleged public dishonesty about it. See Def. Ex. H; Def. Ex. B, Redmond Dep. 144:15–24.**

32. The Investigation Report stemming from the Charge reveals that Plaintiff stated his interview with Slowik occurred in fall 2021, with no mention of any additional interview with Slowik. (Ex. D, ¶(A)(14) (p. 3 of 14).

**RESPONSE: Admit that the IDHR Investigation Report contains a statement referring to a fall 2021 interview with Slowik and does not mention an additional later interview with Slowik. Deny any implication that the absence of such mention establishes that no later protected speech occurred or that "fall 2021" was not a scrivener's error that should have said "fall 2022." Plaintiff testified in this case that he spoke to Slowik shortly before his August 3, 2022 termination and that Slowik's article accurately summarized what Plaintiff told him. Def. Ex. B, Redmond Dep. 144:15–24, 146:1–24, 147:1–24, 148:1–24.**

33. Following Plaintiff's interview with Slowik in the fall of 2021, Village trustees and residents protested Plaintiff being hired. (Ex. D, ¶s (A)(15)-(17) (p. 4 of 14).

**RESPONSE: Admit that the IDHR Investigation Report states that Village trustees and residents protested Plaintiff being hired after the fall of 2021. Plaintiff denies any implication that this fact defeats his claim that his later speech to Slowik in fall 2022 was a motivating factor in his August 3, 2022 termination. See Def. Ex. D; Def. Ex. B, Redmond Dep. 144:15–24, 146:1–24, 147:1–24.**

34. Plaintiff stated that Henyard had Freeman fire him in response to the public pressure to fire him due to his conviction record. (Ex. D, ¶(A)(28) (p. 5 of 14).

**RESPONSE: Admit that the IDHR Investigation Report contains the cited statement. Deny any implication that this statement establishes the sole cause of Plaintiff's termination**

**or defeats his First Amendment claim. Plaintiff testified that the "main reason" for his termination was that he "went to the news" and told Slowik that Henyard knew about his background and had been lying to the media. Def. Ex. B, Redmond Dep. 144:15–24.**

35. Plaintiff further stated that the given reason for discharge on his termination letter is pretext for discrimination due to his conviction record. (Ex. D, ¶(A)(28) (p. 5 of 14).

**RESPONSE: Admit that the IDHR Investigation Report contains the cited statement. Deny any implication that Plaintiff's contention that the termination reason was pretext for conviction-record discrimination precludes his evidence that the same termination was also motivated by retaliation for his protected speech. Plaintiff testified that his protected speech to Slowik was the "main reason" and "deal breaker" for Henyard. Def. Ex. B, Redmond Dep. 144:15–24.**

36. Plaintiff produced the IDHR Charge and Investigation Report as part of his responses to the Village's discovery requests. (Exs. D and H).

**RESPONSE: Admit.**

**Plaintiff's lawsuit against Fox News:**
37. Plaintiff signed and filed a verified complaint against Fox Television Stations, LLC and Fox Corporation ("Fox News"), case number 2024 L 002283, on March 1, 2024. (Ex. I).

**RESPONSE: Admit.**

38. In the complaint Plaintiff states that Fox News Reporter Dane Placko and Fox News published multiple articles and aired live broadcasts about Plaintiff, his criminal history, and his employment by the Village between October 2021 and June 29, 2022, and thereafter Plaintiff was terminated on August 3, 2022 (Ex. I, ¶s 14-18, 22-23).

**RESPONSE: Admit that the Fox complaint contains allegations concerning Fox News publications and Plaintiff's termination. Deny any implication that the Fox complaint establishes the sole or exclusive cause of Plaintiff's termination or defeats Plaintiff's First Amendment retaliation claim in this action.**

39. The Complaint then states, "as a direct and proximate result of Defendants' publication of the false and defamatory statements … Redmond lost his job and his primary source of income and has been unable to find new employment since his termination …" (Ex. I, ¶s 32, 36; see also Count III, ¶31).

**RESPONSE: Admit that the Fox complaint contains the quoted language. Deny any implication that the quoted allegation constitutes a binding admission that Fox News was the sole cause of Plaintiff's termination. Plaintiff testified in this case that the "main reason" for his termination was that he "went to the news" and told Slowik that Henyard knew about his background and lied to the media. Def. Ex. B, Redmond Dep. 144:15–24.**

40. No mention is made in the Complaint of speaking with Slowik or any other reporter, being terminated in retaliation for speaking with a reporter, or Henyard. (Ex. I).

**RESPONSE: Admit that the Fox complaint does not mention speaking with Slowik, being terminated in retaliation for speaking with a reporter, or Henyard. Deny any implication that a separate defamation complaint was required to include Plaintiff's First Amendment retaliation theory against the Village or that its omission eliminates the claim in this case.**

Respectfully submitted,
LAVELL REDMOND

By:    /s/ Matthew R. Custardo
        One of his Attorneys

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

10

## CERTIFICATE SERVICE

The undersigned attorney hereby certifies that on July 1, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Chicago, Illinois, by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this matter, as shown below:

*Michael J. McGrath*
*Odelson, Murphey, Frazier & McGrath, Ltd.*
*3318 W. 95th Street*
*Evergreen Park, IL 60805*
**Attorneys for the Village of Dolton**

*Thomas More Leinenweber*
*Michael J. Schalka*
*LEINENWEBER DAFFADA &*
*SANSONETTI, LLC*
*120 North LaSalle Street, Suite 2000*
*Chicago, IL 60602*
*Phone: 312-606-8705*
*thomas@ilesq.com*
*mjs@ilesq.com*
**Attorneys for Tiffany Henyard**

and I certify that I have mailed same via the United States Postal Service to the following non-CM/ECF participants:

/s/  Matthew R. Custardo

CUSTARDO LAW, LLC
Matthew R. Custardo (ARDC #: 06329579)
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

11